## Electric Vehicle Company v. Fred A. Price.
## Gen. No. 13,613.

1. HUSBAND AND WIFE—*when latter not competent as witness for former.* Unless a wife has acted as the agent of her husband, she is not a competent witness in litigation to which he is a party.

2. RESCISSION—*when must be made.* If a machine purchased and delivered under a contract does not conform to contract requirements, rescission by the vendee must be made within a reasonable time after receipt of the machine.

3. REMEDIES—*where machine delivered is not in accordance with contract.* Where a machine is delivered under a contract the remedies of the vendee are (1) rescission within a reasonable time, (2) an action for damages for breach of contract, and (3) recoupment of damages for breach of contract in an action for the purchase price.

4. CONTRACT—*what not competent to vary terms of.* It is not competent to vary the terms of a written contract by a showing of contemporaneous agreements and representations.

5. VERDICT—*when trial court without power to amend.* The trial court has no power after the lapse of the term at which a verdict is returned to amend the same by adding thereto material words.

6. INSTRUCTIONS—*what must not submit to jury.* An instruction should not submit to the jury the determination of questions of mixed law and fact.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. ALBERT C. BARNES, Judge, presiding. Heard in this court at the March term, 1907. Reversed and remanded. Opinion filed February 13, 1908.

HOYNE, O'CONNOR & IRWIN, for appellant.

JUDAH, WILLARD, WOLF & REICHMANN, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The controversy here relates to a sale by appellant to the appellee of a Columbia Electric Automobile Mark LX Runabout, with top, of standard type, equipped with wooden wheels, pneumatic tires, etc. The price is $975. The contract of sale is in writing,

signed by the parties, and contains the terms and conditions of the sale. Two hundred and fifty dollars was paid upon the purchase price when the contract was signed, the balance of the purchase price being payable upon delivery of the vehicle.

As the case must be reversed for errors of law and will be remanded for a new trial, we shall confine our review and discussion to those questions sufficient to support the conclusions to which we have arrived.

It seems that Price saw a model of the vehicle, covered by the contract of sale, in an automobile show in Chicago, and made the contract to purchase one through Frank J. Fanning, the Chicago representative of appellant. The contract is dated February 22, 1904, and the machine was delivered in Chicago to appellee in May following. A circular of appellant, descriptive of the vehicle sold, setting forth its mechanism and qualities, and its ability as to speed and endurance under specified conditions, was received in evidence as a part of the contract against the protest of appellant. When appellee took the machine from Fanning, the agent, in May, 1904, he testifies that he told Fanning that he "would not accept it until he tried it to see if it was what he expected to get." From the day after he took the machine from Fanning he ran it upon the streets of Chicago and its environing suburbs, with short interruptions, until September, when he left it with Fanning for repairs, since which time he has not called for it, but repudiated the contract and refused to comply with it by paying the balance due on the purchase price and receiving the machine.

The machine was sent to the Chicago branch office for repairs several times, and also on the complaint that it did not develop the speed set forth in the circular.

Mrs. Price, the wife of appellee, testified at his instance against the objection of appellant. Her testimony is confined to the manner in which the machine worked and of complaints made to Fanning and con-

versations had with him about the machine, and of complaints which her husband made in relation to it, and of conversations between Fanning and appellee in her presence.

The jury found the issues for the appellee, and the court in overruling appellant's motion for a new trial amended the verdict by adding to it a finding in favor of appellee on his plea of set-off for the $250 paid upon the contract, and gave judgment thereon against appellant.

The errors controlling our decision consist in the admission of the so-called circular in evidence, permitting the wife of appellee to testify, in not holding that the contract in evidence for the sale of the machine was binding upon the parties, and in amending the verdict of the jury in a matter of substance one month after its rendition, and error in the giving of instructions.

Mrs. Price was clearly incompetent to testify in behalf of her husband, the appellee. In no sense was she the agent of her husband in the transaction. Price made his own contract, signed it with his own name in person, conducted all the negotiations leading up to the making of the contract; he went to appellant's office and received the machine from its agent, Fanning, returning it several times, making his own complaints. He makes no pretense in his testimony that his wife was his agent in this matter, neither can there be extracted from his or his wife's evidence any facts which in law would constitute Mrs. Price the agent of her husband. Mrs. Price clearly falls within the inhibition of the statute, and does not bring herself within the exemption clause. R. S. Ill., chap. 51, sec. 5; Robertson v. Brost, 83 Ill. 116; Hayes v. Parmalee, 79 Ill. 563; Poppers v. Wagner, 33 Ill. App. 113.

Mrs. Price is no more qualified to give testimony in this case than was the wife in the case of Robertson v. Brost, *supra*, where the husband attempted to qualify his wife as a witness in his behalf by constituting

her an agent to collect an account for coal already delivered, and thereby enable her to testify as to what the debtor said to her when she presented the account for payment. As the court said in that case, so we say in this—"We are of the opinion the wife should not have been received as a witness at all." Her testimony must relate to transactions had by her as agent for her husband, in order for her to come within the saving clause of the statute, not as to conversations and admissions made relative to the transaction after the transaction itself has been made and concluded by the husband.

The contract of the parties has this provision:

"All previous communications between the parties hereto, either verbal or written, with reference to the subject-matter of this proposal are hereby abrogated, and this proposal duly accepted and approved constitutes the sole agreement between the parties hereto as to the subject-matter hereof, and no modification of this agreement shall be binding upon the parties hereto, or upon either of them, unless such modification shall be in writing duly accepted by the purchaser and approved by an executive officer of the company."

This provision is in effect a statement of the law governing written contracts. This contract being the contract of the parties, their rights, obligations and duties must be admeasured in accordance with its covenants and provisions.

It is not denied that appellee received the kind of machine called for by the contract. If the machine was not according to contract, and appellee sought to repudiate the contract for that reason, then it was incumbent upon him, immediately upon ascertaining that fact, to return the machine to appellant. Under no circumstances could he keep the machine longer than a reasonable time in which to ascertain defects constituting it as variant from the kind of a machine bargained for in the contract. Beyond this he must be held to have accepted the machine under the contract, and if it was in fact deficient in any material respect from that in the

contract bargained for, he must resort to an action for damages as for a breach of contract in this respect, or recoup such damages in an action for the purchase price. Underwood v. Wolf, 131 Ill. 425. By the very terms of the contract all previous or contemporaneous agreements and representations were merged in the contract, and the rights of the parties were by the contract as well as under the law so environed. The circular which contained any statement or representation variant from the terms of the contract or in conflict with any of its provisions, was inadmissible as evidence affecting or in any manner changing the contract rights of the parties. Telluride Power Co. v. Crane, 208 Ill. 218; Schneider v. Sulzer, 212 *ibid.* 87.

In the case at bar appellee claims. to have bought the machine on the representation that it would be the same in every respect as one which he had seen at the automobile show. If this is the fact, then upon appellee rested the burden of proving that the machine received by him was not according to the sample, and to recoup such damages as he may have sustained by reason of that fact, if it was a fact; not to keep the machine in excess of four months and then return it with a repudiation of the contract in faith of which it was delivered to him.

While it is admitted a court has the power to amend the verdict of a jury in a matter of form, still it is equally as well settled that such a power is denied the court in matters of substance. The trial court one month thereafter, and at the succeeding term amended the verdict by adding to it these words, "and assess the defendant's damages at the sum of $250 on his plea of set-off." This is in itself reversible error. It is idle to contend that such amendment was only formal. It was' the determination by the court of the merits of the cross-action under the plea of set-off. It was not only the form, but the very substance of appellee's counter claim. It may well be, in the view the

learned trial judge took of the law and the instructions given to the jury, that the jury's verdict should logically have included a finding for the amount proven under the plea of set-off. But as they did not do so, why they did not is immaterial. Their failure did not clothe the court with the power to usurp the function of the jury and in a summary manner supply the delinquency, if such it was, by amending their verdict. This was an invasion of the constitutional right of appellant to a trial by jury of the claim made against it. As said in Ayer v. City of Chicago, 149 Ill. 262: ''When the court set aside the judgment based upon the verdict of the jury, and changed the verdict in the manner already stated at a subsequent term, and in the absence and without the consent of the jury or of appellants, there was a new verdict rendered, not by a jury, but by a court acting without a jury.'' These observations are forcibly applicable here and equally conclusive against appellee's contentions to the contrary. An examination of authorities cited by counsel for appellee, and claimed by them to announce a contrary doctrine, does not show them, in our opinion, susceptible of the construction claimed for them by counsel. The doctrine of the Ayer case is the law of Illinois. No case in this jurisdiction holding to the contrary has been cited, and we assume from counsel's diligence (of which their brief is cogent proof) for the reason none exist. Our research has failed to disclose any case detracting from or in any particular modifying the ruling in the Ayer case.

We have examined all the instructions urged upon us as being erroneous. We do not agree with counsel in their criticism of the first of appellee's instructions. They have evidently misinterpreted its force as applied to the facts. Appellant made a *prima facie* case, within the legal intendment of this instruction, upon proof of the contract and the delivery to appellee of the machine called for by the contract and the amount of the purchase price remaining unpaid. Breach of

warranty, if any there was, or that the machine was not the same as the sample from which it was bought, were matters of defense under pleas of recoupment or set-off.

We think the second, third, fourth and fifth instructions possess the infirmities attributed to them by appellant. These errors proceed from the erroneous theory of the defense upon which the cause was submitted to the jury. Mixed questions of law and fact were submitted to the jury under instructions two, three and four. Wallard v. Worthman, 84 Ill. 446. The fifth instruction was erroneous in telling the jury in effect that the agent of appellant could change the terms of the written contract, and that appellee had the right to insist on taking the machine on trial before accepting it. Both of these directions were contrary to appellant's right under the contract.

For the errors indicated the judgment of the Superior Court is reversed and the cause remanded for a new trial conformable to the views here expressed.

*Reversed and remanded.*